KATHRYN W. ROSIER, petitioner.

*v.*

EMILY L. FISCHER, respondent.

[Submitted June 6th, 1924.    Determined June 13th, 1924.]

**Custody of Children—Rights of Parents—Best Interest of Child —Facts Considered at Length and Writ Dismissed Without Prejudice.**

On petition.   On hearing at return of writ of *habeas corpus.*

*Mr. William T. Boyle,* for the petitioner.

*Mr. Walter S. Keown,* for the respondent.

LEAMING, V. C.

The petition filed herein sets forth that Oscar Rosier, Jr., is ten years of age and is the legally adopted son of petitioner: that the child is now in the custody of Emily L. Fischer, with whom petitioner placed the child to board; that Mrs. Fischer, against the will of petitioner, refuses to surrender the custody of the child to petitioner.   The petition then prays that a writ of *habeas corpus* may be issued commanding Mrs. Fischer to bring the child before this court and disclose the cause of his detention and submit to such order as the court should make.   No specific prayer is made in the petition that the custody of the child be awarded to petitioner.

A writ of *habeas corpus* was then issued pursuant to the prayer of the petition, and on the return day the child was brought into court and a return, under oath, filed to the writ by the respondent, setting forth that the child was eleven years of age and in the custody of respondent: that the child

was placed in respondent's custody by petitioner in January, 1923, with the consent of the Delaware County Trust Company, who was the guardian of the child's property, and that the child has been in respondent's custody since that time; that respondent has never refused to surrender the custody of the child to petitioner; that respondent maintains a home for motherless children and at the request of petitioner took the child to board; that respondent has been paid for the board and maintenance of the child by said trust company; that respondent has well cared for the child, and at no time has refused to permit petitioner to see the child or refused her the child's custody; that on one occasion in the last month respondent, upon receipt of a telephone call from petitioner that she was coming for the child, had him dressed waiting to go with petitioner, but petitioner did not appear to take the child.

No answer has been filed to that return.

In view of the statements contained in the opinion filed by Mr. Justice Knapp in *Richards* v. *Collins, 45 N. J. Eq. 283,* to the effect that a failure to traverse the material averments of a sworn return to a writ of *habeas corpus* is operative to admit their truth for the purposes of the case, it may be doubted whether this court can at this time do more than merely discharge the writ. The admission of the averment of the return to the effect that respondent has not refused to surrender the custody of the child to petitioner, would seem to render the writ improvidently issued.

When the cause came on for hearing, this aspect of the situation was brought to the attention of the parties by the court with the inquiry whether respondent was now willing to surrender the child to petitioner. By reason of the hesitancy of counsel for respondent to give that assurance the hearing proceeded upon the assumption that respondent, as present custodian of the child, contested petitioner's claim of right to custody.

The child, here the subject of controversy, is the son of petitioner's husband by a former marriage. After marrying the child's father petitioner adopted the child by formal

court proceedings. Since that time petitioner has become a widow.

The general effect of adoption is the creation of a relation between the adoptive parent and the adopted child, which is essentially the same as that of a natural parent and child. The duty of obedience of the child and the obligation of control and support imposed upon the adoptive parent are precisely the same as like duties and obligations arising from the natural relation.

It follows that it is the strict legal right of petitioner to enjoy the custody of her adopted child.

But this right cannot be enforced by the courts in all circumstances. It has long been the recognized law of this state, as defined by our court of last resort, that in controversies over a child's possession "its welfare will be the paramount consideration in controlling the discretion of the court." "The court will not regard the parental right as controlling, when to do so would imperil the personal safety, morals, health or happiness of the child." The age and mental development of a child must also be considered. While it is scarcely possible to refuse a parent the custody of a child of tender years, should the parent in all respects be a desirable custodian (*Ziezel* v. *Hutchinson, 91 N. J. Eq. 325*), other circumstances, including the wishes of the child, properly may be considered when the child has attained an age and mental development to appreciate the circumstances of the case and form a rational judgment. *Richards* v. *Collins, 45 N. J. Eq. 283.*

At this time petitioner enjoys neither a home nor pecuniary means to care for her adopted son. It is her wish to place the child in the home of a friend who has recently established a residence at Audubon, New Jersey, whereas petitioner resides in Pennsylvania. The court has been afforded but meagre information touching either the home or essential qualities of this friend of petitioner's as a custodian for this child. To treat the petition as a petition for custody and grant the relief now urged by petitioner is to award the custody of the child to this friend of petitioner and

not to petitioner, except in the sense that the award would be to a person of petitioner's choice.

The child, who is the subject of controversy, is eleven years of age, enjoys unusual mental development and keenly comprehends all the circumstances surrounding the present situation. He is happy in his present home and desires to remain there. He repels with the keenest intensity any effort to compel him to return to petitioner or to go to the home of petitioner's friend. A close attachment has arisen between the boy and respondent, and their separation, if enforced, obviously will be a source of great sorrow to both. Respondent's home is well equipped with surroundings peculiarly suited to the boy's apparent love of trees and flowers, and the care the boy has there received is shown to have been all that could have been desired, unless force shall be attributed to certain criticisms which have been made touching religious training received by the boy at the hands of respondent. The objection to that religious training appears to be that it subordinates the creeds of churches and church attendance to the ideals and teachings of Christ. Nor is it entirely clear that this objection in fact comes from petitioner.

The single doubt which has entered my mind touching the fitness of respondent as a custodian of the boy, and the desirability of her home as a home for the boy, arises from the circumstances that during the period he has been in respondent's custody he has developed an intense hatred of petitioner; that hatred is based upon the boy's belief that petitioner wrongfully caused the death of both his mother and his father. Whether respondent has encouraged the development of that attitude of the boy cannot be known with certainty. The intimate relations between the boy and respondent, and the circumstance that the boy's hatred of petitioner apparently has arisen during the period of respondent's custody, suggests that respondent may not be without some degree of responsibility for that mental attitude of the boy. A letter recently written by the boy to petitioner is filled with cruel statements and expressions of

hatred, and respondent has admitted upon the witness-stand that the boy showed her a copy or preliminary draft of that letter before it was sent, and no suggestion was made by respondent to the effect that she tried to dissuade the boy from sending the letter or to induce him to modify its severity of pression. Indeed, the perfect composition of the letter, and some of the thoughts embodied in it, strongly suggest the aid of some older mind in its preparation. It also is reasonably apparent that at this time some degree of personal antagonism exists between petitioner and respondent; this, if continued, may tend to interfere with the freedom which should exist for petitioner to visit her boy as frequently as she may desire. Unless these circumstances are given weight the home of respondent may be classed as an ideal home for this boy.

A consideration of all the circumstances of the case impels the conclusion that it is my duty at this time to make no award of the custody of the boy to anyone, but to simply dismiss the writ. Neither petitioner nor respondent will be awarded custody by the decree to be entered. The decree need not remove restraint, since there is no physical restraint. For the present the boy will be privileged to remain where he is or return to petitioner or to a proper place of petitioner's selection. But the writ must be discharged without prejudice to petitioner's right to reassert her claim for custody, based upon such conditions as may arise in the future.

Lest the effect of the decree may be misunderstood by the parties, it should be here stated with plainness that custody of the boy is not in any sense to be awarded to respondent. Should the boy elect to remain with respondent, well-defined duties on her part will arise which she must observe. It will be her duty to use every means in her power to induce the boy to respect and love petitioner. If it could be known at this time that she has poisoned the mind of the boy against petitioner she would be deemed an unfit custodian. It will be her duty to encourage and make pleasant visits of petitioner to her home to see the boy. If her attitude toward

petitioner is to be one of hostility, and petitioner is not to be received in her home with cordiality in encouragement of parental relations between the boy and petitioner, she will necessarily be deemed an unfit custodian. It may thus be understood that any failure of respondent to observe these duties may be made the basis of a future application for the removal of the boy from her home.

Therefore, the decree of dismissal to be entered is not to be understood by the parties as an adjudication that respondent has any right whatever to the custody of the boy. As a stranger she has no such right. The adjudication is that, even treating the petition as one for custody under the general jurisdiction of this court as the guardian of all minors, it does not appear that at this time the best interests of the boy will be conserved by an order awarding his custody to petitioner.

The writ will be dismissed, without prejudice.